[No. C057450. Third Dist. July 16, 2008.]

EXPLORER INSURANCE COMPANY, Plaintiff and Respondent, v. DWAINE GONZALEZ, Defendant and Appellant.

**COUNSEL**

Demas & Rosenthal and S. David Rosenthal for Defendant and Appellant.

Farmer Smith & Lane and Blane A. Smith for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, P. J.**—All insurance policies issued in California covering liability arising out of the use of a motor vehicle must include uninsured and underinsured coverage for bodily injury "with coverage limits [at least] equal to the limits of liability for bodily injury in the underlying policy" (Ins. Code, § 11580.2, subd. (m); see *id.*, subds. (a)(1), (n), (p); further section references are to the Insurance Code). Therefore, when an insured person suffers bodily injury caused by a person who also has insurance, but "for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person" (§ 11580.2, subd. (p)(2)), the insurance policy of the injured person will cover the difference.

At issue in this case is whether a tortfeasor whose insurance policy covers liability *"with combined single limits* in the amount of $100,000.00 for all *bodily injury and property damage* caused by any single accident" (italics added) is an underinsured motorist with respect to an injured person (1) whose policy includes underinsured motorist benefits up to $100,000 for bodily injury sustained by any one person in a single accident, and (2) whose damages for bodily injury are less than $100,000 but whose damages for both bodily injury and property damages are $100,000.

As did the trial court, we conclude the underinsured coverage of the injured person's policy was not triggered in this circumstance. This is so because the tortfeasor's policy covered damages for bodily injury up to $100,000 if there is no property damage—such as if the tortfeasor hit a pedestrian rather than another car, as occurred in this case. Thus, it cannot be said that the tortfeasor's policy was for an amount less than the $100,000 bodily injury coverage of the underinsured motorist provision in the injured

person's policy. In other words, the comparison in coverage is based on the potential for recovery, not what is actually recovered in a particular case.

## FACTUAL AND PROCEDURAL BACKGROUND

Dwaine Gonzalez was injured in an automobile collision caused by Benjamin Fernandez.

Fernandez was insured by a Fireman's Fund Insurance Company (Fireman's Fund) policy that covered liability "arising out of the use of his automobile with combined single limits in the amount of $100,000.00 for all bodily injury and property damage caused by any single accident." Gonzalez was insured by an Explorer Insurance Company (Explorer) policy that included uninsured and underinsured motorist benefits of $100,000 for all damages from bodily injury sustained by any one person in any single accident.

Fireman's Fund paid Gonzalez $21,584.11 for property damage and $78,415.89 for bodily injuries arising from the collision, thus exhausting the limits of the $100,000 Fireman's Fund policy.

Gonzalez then made a claim against the underinsured motorist bodily injury provision of his Explorer policy for $21,584.11, the difference between the $78,415.89 he received from Fireman's Fund for bodily injuries and the $100,000 limit of his Explorer underinsured motorist coverage.

Explorer denied the claim, concluding it did not qualify as an underinsured motorist claim because Fernandez's $100,000 combined single limit for liability coverage policy afforded bodily injury limits of up to $100,000 and was, therefore, not less than the underinsured motor vehicle bodily injury liability limits of the Explorer policy.

Explorer brought a declaratory relief action, seeking a judicial determination that Gonzalez had no "cognizable claim for underinsured motorist benefits because the $100,000 combined single limit for liability in [Fernandez's] Fireman's Fund policy, afforded bodily injury limits of liability of up to $100,000, and therefore, was not less than the (Underinsured) Motor Vehicle Bodily Injury liability limits of [Gonzalez's] EXPLORER policy." Judgment was entered in Explorer's favor following a bench trial on undisputed facts.

After the appellate division of the superior court affirmed the judgment, Gonzalez successfully petitioned for a transfer of the case to this court.

## DISCUSSION

■ Due to the harm that can be caused by financially irresponsible motorists, section 11580.2 requires that insurance policies covering the ownership, maintenance, and use of a motor vehicle must provide coverage for bodily injury caused by an uninsured or underinsured driver. (*Daun v. USAA Casualty Ins. Co.* (2005) 125 Cal.App.4th 599, 605–606 [23 Cal.Rptr.3d 44].) Thus, underinsured motorist coverage "was created to provide additional coverage for the insured who is injured by a tortfeasor who has minimal liability insurance." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1053 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) "Unless the insurer and named insured execute a written waiver in the statutory form (§ 11580.2, subd. (a)(2), (3)), section 11580.2 becomes part of every motor vehicle liability insurance policy [citation] and sets forth a mandatory minimum required by law. [Citation.]" (*Daun v. USAA Casualty Ins. Co., supra*, 125 Cal.App.4th at p. 606.)

Subdivision (p) of section 11580.2 "defines terms for underinsured motorist coverage, limits coverage, establishes the maximum liability of the insurer, sets out the insurer's entitlement to credit or reimbursement and requires the insured to share information with the insurer." (*Quintano v. Mercury Casualty Co., supra*, 11 Cal.4th at p. 1053.)

As used in the statutory scheme, an " '[u]nderinsured motor vehicle' means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." (§ 11580.2, subd. (p)(2).)

To determine whether the vehicle driven by Fernandez was an underinsured motor vehicle with respect to Gonzalez requires us to interpret, in the context of undisputed facts, the provisions of their policies. This is a question of law that we determine independently on appeal. (*California Capital Ins. Co. v. Nielsen* (2007) 153 Cal.App.4th 1221, 1223 [64 Cal.Rptr.3d 50].)

Gonzalez's Explorer insurance policy included "Uninsured Motorist and Underinsured Motorist Coverage" for "compensatory damages which an Insured Person is legally entitled to recover from the owner or operator of an Uninsured Motor Vehicle or an Underinsured Motor Vehicle because" of "bodily injury," with a limit of "$100,000 each person $300,000 each accident"; "[a]ny amounts payable will be reduced by: [¶] . . . a payment made by the owner or operator of the Uninsured Motor Vehicle or Underinsured Motor Vehicle or organization which may be legally liable . . . ." The policy further specified: "Underinsured Motor Vehicle means a motor vehicle which is insured for Bodily Injury by a liability bond or policy at the time of

the accident providing Bodily Injury limits of liability less than the Uninsured Motor Vehicle Bodily Injury liability limits of this coverage," i.e., $100,000 each person, $300,000 each accident.

Fernandez's Fireman's Fund insurance policy covered liability "arising out of the use of his automobile with combined single limits in the amount of $100,000.00 for all bodily injury and property damage caused by any single accident."[1]

Accordingly, Explorer would owe its insured, Gonzalez, underinsured motorist benefits under its policy if Fernandez's policy limit for bodily injury was less than $100,000, the underinsured motorist limit of Gonzalez's Explorer policy for bodily injury to one person.

Given that each policy contained the same coverage limit, $100,000, the trial court ruled the underinsured motorist coverage of Gonzalez's Explorer policy was not triggered because the coverage afforded by Fernandez's Fireman's Fund policy was not less than the underinsured motorist coverage in the Explorer policy, and the fact that the Fireman's Fund policy had a combined limit of $100,000 for *all bodily injury and property damage* caused by any single accident was "not determinative," citing *State Farm Mut. Auto. Ins. Co. v. Messinger* (1991) 232 Cal.App.3d 508 [283 Cal.Rptr. 493] (hereafter *Messinger*).

The dispute in *Messinger* arose out of a collision in which a car driven by John Ballard injured three people riding in another car, George Messinger, Diana Messinger, and Georgette Sehn. Ballard had a vehicle liability insurance policy including bodily injury coverage with an aggregate single limit of $300,000. The Messingers had a vehicle insurance policy including uninsured and underinsured motorist coverage for bodily injury up to $100,000 per person and $300,000 per accident. Ballard's insurer settled with the Messingers and Sehn, paying $5,000 each to the Messingers and $290,000 to Sehn. When the Messingers' insurer denied their claim for underinsured motorist benefits, they filed a lawsuit. (*Messinger, supra*, 232 Cal.App.3d at p. 512.) According to the Messingers, their insurer was "indebted to them for $95,000 apiece, the difference between [the Ballard insurer's] payment to them and their underinsured per person coverage of $100,000." (*Id.* at p. 515.)

*Messinger* disagreed because "[i]n California, underinsurance coverage is not triggered by the amount of the injured person's damages or by the

---

[1] What we have just quoted is language from the parties' "stipulation of truth of facts." Whether it is the precise language of the pertinent part of the Fireman's Fund policy, or just the parties' characterization of the provision, is unknown because the appellate record does not include a copy of the policy.

proceeds available to each injured person, but by a comparison of the tortfeasor's bodily injury liability limits with the injured person's underinsurance limits." (*Messinger, supra,* 232 Cal.App.3d at p. 521.) This is so because "the 'narrow coverage' view" of underinsurance coverage adopted in California "focuses on placing the insured in the position he or she would have been in if the underinsured motorist had had liability coverage equal to the insured's underinsured motorist limits." (*Ibid.*) Thus, a "central feature of California's underinsurance scheme is that it 'permit[s] individuals to purchase insurance for themselves in an amount they deem appropriate.' [Citations.]" (*Ibid.*)

Simply stated, determining whether the tortfeasor's vehicle was underinsured is done by "simply comparing" the limits of the insurance policies. (*Messinger, supra,* 232 Cal.App.3d at p. 514.) If the liability limit of the tortfeasor's policy is "not 'an amount *less* than the uninsured/[underinsured] motorist limits' " of the injured person's policy, that ends the inquiry, and the injured person's uninsured/underinsured coverage is not triggered. (*Id.* at pp. 514, 516, original italics.) Such was the situation in *Messinger* because by "simply comparing Ballard's limits ($300,000) with the Messingers' limits ($300,000), it is clear that Ballard's car was not an underinsured motor vehicle as defined by the Insurance Code and the Messingers' insurance policy" because "Ballard's car was insured for an amount *equal* to the uninsured/underinsured coverage the Messingers carried . . . ." (*Id.* at p. 514, original italics.)

 Here, the Fireman's Fund policy carried by Fernandez provided "combined" coverage up to $100,000 "for all bodily injury and property damage caused by any single accident." The Explorer policy carried by Gonzalez provided coverage up to $100,000 for all damages from bodily injury sustained by any one person in a single accident. Because the *amount* of the potential coverage was equal, Fernandez's vehicle was not underinsured within the meaning of section 11580.2 and Gonzalez's insurance policy.

The fact that the $100,000 coverage of Fernandez's Fireman's Fund policy was for all bodily injury and property damage combined, whereas the $100,000 coverage of Gonzalez's Explorer policy was for bodily injury only, is immaterial because under the "narrow coverage" of uninsured/underinsured benefits in California, the comparison in coverage is based on the potential for recovery, not what is actually recovered in a particular case. (*Messinger, supra,* 232 Cal.App.3d at pp. 514, 516, 521.)

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 22, 2008, S166205. Kennard, J., did not participate therein.